OPINION
Petitioner-appellant, Viola Bowman (formerly known as Viola Dick), appeals a judgment of the Warren County Court of Common Pleas, Probate Division, denying her motion to terminate the guardianship of her sons, Zachary and Tylor Dick. We affirm the decision of the probate court.
Appellant and Joey Dick are the natural parents of Zachary, age nine, and Tylor, age seven. Appellant and Joey Dick were divorced in 1993 and a decree was entered in the Warren County Court of Common Pleas which apparently included a shared parenting agreement. On February 7, 1994, Betty and Leonard Dick, the paternal grandparents of Zachary and Tylor, filed an application for appointment of guardian in probate court. Betty and Leonard Dick stated that the guardianship was necessary because the children had been in their care and custody for approximately one year. The guardianship for which they applied was non-limited and indefinite. Accompanying the application for guardianship was a waiver of notice, signed by appellant and Joey Dick. An investigator's report found that Betty and Leonard Dick had been providing care for the children for two years. On March 3, 1994, Betty and Leonard Dick were appointed guardians of Zachary and Tylor.
On November 21, 1997, appellant filed an application to terminate the guardianship. In her application, appellant asserted that she was a suitable parent who had the parental skills and resources to provide for the care and support of the children, and that the guardianship was intended to be temporary.
A two-day hearing was held in probate court before a magistrate on the motion to terminate the guardianship. Before the hearing, appellant and Betty and Leonard Dick agreed that the probate court had proper jurisdiction over this matter, and that the motion to terminate guardianship should be considered under a "best interest of the children" analysis. In an entry filed on September 21, 1998, the magistrate ordered the termination of the guardianship and the return of the children to the legal care, custody, and control of appellant. The magistrate's decision was approved by Judge Mark Clark; however, Judge Clark had removed himself from the case eight months previously on January 8, 1998, and the case was reassigned to Judge James Flannery. Betty and Leonard Dick promptly filed objections to the magistrate's decision. Another hearing was held to receive supplemental testimony as to factors that had changed from the previous hearing, and on November 16, 1998, Judge Flannery granted the objections to the magistrate's decision and dismissed the motion to terminate the guardianship. Appellant subsequently filed this appeal.
Assignment of Error No. 1:
 THE PROBATE COURT DID NOT HAVE JURISDICTION TO AWARD THE LETTERS OF GUARDIANSIP WHEN THE DOMESTIC RELATIONS COURT HAD CONTINUING JURISDICTION OVER THE PARTIES, WHICH JURISDICTION HAD NEVER BEEN RELINQUISHED OR TRANSFERRED.
In her first assignment of error, appellant argues that because the domestic relations court had issued a divorce decree involving appellant and Joey Dick, it had continuing jurisdiction over the custody of Zachary and Tylor; therefore, appellant asserts the probate court did not have jurisdiction to award letters of guardianship. Appellant states that because there was no document filed in the domestic relations court requesting the relinquishment of jurisdiction or transfer of jurisdiction, the guardianship should be rendered void.
We note initially that appellant, in a pretrial brief submitted to the probate court, conceded that the cause was properly within the jurisdiction of the probate court. Moreover, appellant never filed a copy of the divorce decree with the probate court or with this court in order to establish a basis for her argument in this assignment of error.
At the time of their application for guardianship, Betty and Leonard Dick presented an affidavit to the probate court that stated that they had "no information of any custody proceeding concerning the children pending in a court of this or any other state." There is no evidence before us indicating that at the time that the probate court assumed jurisdiction over the custody of Zachary and Tylor, it had any knowledge of the divorce decree.
R.C. 2101.24(A)(1) states the following: "Except as otherwise provided by law, the probate court has exclusive jurisdiction: * * * (e) To appoint and remove guardians, conservators, and testamentary trustees, direct and control their conduct, and settle their accounts." The probate court has original jurisdiction over letters of guardianship. However, where a court of common pleas, upon rendering a decree of divorce, has continuing jurisdiction over the custody, care, and control of minor children, a probate court cannot legally interfere with custody by issuing letters of guardianship. Loetz v. Loetz
(1980), 63 Ohio St.2d 1, 3-4; Hoffman v. Hoffman (1864), 15 Ohio St. 427. From this statement of law, appellant asserts that the probate court lacked jurisdiction to alter the custody of the children by appointment of guardians and that her motion to terminate a guardianship must be granted.
In Fraley v. Perigo (Apr. 30, 1984), Madison App. No. CA83-09-033, unreported, this court found that it was error for a probate court to overrule a mother's motion to terminate the guardianship of her son. In that case, this court agreed with the mother's assertion that "because the Clark County Court of Common Pleas, [sic] assumed jurisdiction of the question of custody as a result of the dissolution of marriage proceedings, all other courts are thereby precluded from exercising jurisdiction over the custody of the child." Id. at 3. However, this court added, "[s]uch statement is basically true, but obviously the question does not arise unless jurisdiction is contested." Id. In Fraley, the mother argued that she had understood the guardianship to be only a temporary arrangement so that her son could attend school in London, Ohio. Id. at 2. The mother filed a motion to terminate eight months after the guardianship was imposed. Id.
Unlike the guardianship in Fraley, the guardianship at issue in this case continued for more than three years before appellant filed a motion to terminate; appellant can hardly argue that this was a temporary arrangement. Also, in a pretrial brief filed prior to the hearings on her motion to terminate, appellant assured the probate court that it had jurisdiction over the case. Only on the appeal of her motion to terminate did appellant finally raise the issue of jurisdiction. These differences in factual circumstances and legal arguments make the present case distinguishable from Fraley.
It is impermissible to collaterally attack a probate court's exercise of jurisdiction. See In re Clendenning (1945), 145 Ohio St. 82. An error of a court in the exercise of its jurisdiction over a particular case does not render an order void, but only voidable. Jeffries v. Jeffries (Dec. 29, 1986), Warren App. No. CA86-09-064, unreported. Therefore, the time for direct appeal having passed more than three years ago, the judgment of the probate court appointing guardians, notwithstanding a lack of jurisdiction to do so, cannot be attacked. The first assignment of error is overruled.
Assignment of Error No. 2:
 A DECISION FOLLOWING TRIAL TO THE COMMON PLEAS COURT CAN ONLY BE APPEALED IN THE COURT OF APPEALS WHERE THE MAGISTRATE'S DECISION STANDS AS THE DECISION OF THE COURT.
In her second assignment of error, appellant contends that because the probate court ordered that the magistrate's decision of this case was to stand as the court's decision, such decision was a final appealable order. Therefore, appellant asserts that upon the issuance of the magistrate's decision, the Dicks should have filed an appeal, rather than filing objections to the magistrate's decision.
Per order dated January 8, 1998, Judge Clark recused himself from this case and referred the matter to Magistrate Jeffrey Richards. This order, which was signed by Judge Clark, stated the following: "It is further Ordered that said Magistrate prepare a decision, which shall stand as the decision of the Court, and judgment may be entered thereon as if the Court had tried the action." (Emphasis sic.)
A judge, in an entry recusing himself, cannot lawfully make an order applicable to subsequent proceedings. The nature of a recusal is that a judge disqualifies himself from a case by reason of self-interest, prejudice, or bias. A recused judge has no control over the proceedings that follow his recusal.
Moreover, an order allowing a magistrate's decision to become effective without approval by a trial court judge is not permitted by the civil rules. Civ.R. 53(C)(2), which pertains to magistrates, states the following:
 General powers. Subject to the specifications and limitations stated in the order of reference, the magistrate shall regulate all proceedings in every hearing as if by the court and do all acts and take all measures necessary or proper for the efficient performance of the magistrate's duties under the order. The magistrate may do all of the following:
 issue subpoenas for the attendance of witnesses and the production of evidence; rule upon the admissibility of evidence, unless otherwise directed by the order of reference; put witnesses under oath and examine them; call the parties to the action and examine them under oath.
 In cases involving direct or indirect contempt of court, and when necessary to obtain the alleged contemnor's presence for hearing, issue an attachment for the alleged contemnor and set bail to secure the alleged contemnor's appearance, considering the conditions of release prescribed in Crim. R. 46. (Emphasis sic.)
The relevant portion of Civ.R. 53(E)(4) states the following:
Court's action on magistrate's decision.
 When effective. The magistrate's decision shall be effective when adopted by the court. The court may adopt the magistrate's decision if no written objections are filed unless it determines that there is an error of law or other defect on the face of the magistrate's decision.
 Disposition of objections. The court shall rule on any objections. The court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. The court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration.
 Permanent and interim orders. The court may adopt a magistrate's decision and enter judgment without waiting for timely objections by the parties, but the filing of timely written objections shall operate as an automatic stay of execution of that judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered. The court may make an interim order on the basis of a magistrate's decision without waiting for or ruling on timely objections by the parties where immediate relief is justified. An interim order shall not be subject to the automatic stay caused by the filing of timely objections. An interim order shall not extend more than twenty-eight days from the date of its entry, unless, within that time and for good cause shown, the court extends the interim order for an additional twenty-eight days.
A review of these sections of Civ.R. 53 shows that the rule does not allow a court to permit a magistrate's decision to stand as the final decision of the court without any review. Therefore, the proper procedure was followed by filing objections to the magistrate's decision, as the magistrate's decision was not a final appealable order. Appellant's second assignment of error is not well-taken.
Assignment of Error No. 3:
 WHILE A PARENT MAY VOLUNTARILY RELINQUISH THE RIGHT TO CUSTODY, THIS PRESUMES THAT THE CONSENT WAS FREELY AND VOLUNTARILY GIVEN AND THAT THE PARENT KNEW HIS OR HER RIGHTS WITH RESPECT TO CUSTODY AND UNDERSTOOD THE RAMIFICATIONS OF THEIR AGREEMENT.
In her third assignment of error, appellant argues that it was error for the trial court to find that appellant knowingly consented to the establishment of the guardianship where, believing that Betty and Leonard Dick were replacing her former husband in their shared parenting agreement, she signed a waiver of notice and hearing without advice from counsel.
The probate court judge, as well as the magistrate, found that appellant had consented to the establishment of the guardianship. This is a factual determination, and as such, this court must not disturb it so long as it is supported by competent, credible evidence. See C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279. The factual findings of the trial court are presumed correct, because the trial judge is best able to view the witnesses and observe the demeanor, gestures, and voice inflections so as to weigh the credibility of the presented testimony. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80.
In this case, the magistrate held a two-day hearing and the trial court judge held a hearing to receive supplemental testimony. The evidence before the court indicated that appellant had freely signed a waiver of notice of the guardianship proceeding in 1994. Moreover, appellant never objected to the guardianship before this motion to terminate, which was filed more than three years after Betty and Leonard Dick were appointed guardians. Although appellant now claims that she did not understand the significance of signing a waiver of notice of the guardianship proceeding, we find that there is competent, credible evidence to support the trial court's finding that her consent to the guardianship was freely and knowingly given.
After finding that appellant had consented to the establishment of guardianship, the probate court analyzed the question of guardianship by considering the best interest of the children, a domestic relations court standard. In so doing, the probate court relied upon Masitto v. Masitto (1986), 22 Ohio St.3d 63. However, we find that case to be distinguishable from the circumstances of the case sub judice. In Masitto, a guardianship of a child was established before the child's mother and father had divorced. Masitto at 64. Thereafter, the existing guardianship was noted in the divorce proceedings and referenced in the divorce decree. Id. Under these circumstances, the Supreme Court of Ohio found that the child's best interest was the appropriate test for a change in custody. Id. at 66.
Unlike Masitto, the case before this court involves a guardianship that was established in probate court after the divorce of the natural mother and father. Also, the guardianship was never assimilated into the divorce decree in this case. We find that Masitto is not controlling here, and therefore the probate court should have followed the standards established by the probate sections of the Ohio Revised Code, R.C. 2101 et seq.
It is notable that this proceeding, which originated in and was conducted in probate court, contains no reference to R.C. 2101, et seq. A review of applicable sections of the Revised Code indicates that when appointing a guardian or sustaining an existing guardianship, a probate court must consider the need (or necessity) of the guardianship as well as the suitability of the guardians. R.C. 2111.02, which provides for appointment of guardians, states the following:
 When found necessary, the probate court on its own motion or on application by any interested party shall appoint, * * * a guardian of the person, the estate, or both, of a minor or incompetent, provided the person for whom the guardian is to be appointed is a resident of the county or has a legal settlement in the county and, except in the case of a minor, has had the opportunity to have the assistance of counsel in the proceeding for the appointment of such guardian. (Emphasis added.)
R.C. 2111.06, regarding guardian of the person, explains the following: "A guardian of the person of a minor shall be appointed as to a minor having neither father nor mother, or whose parents are unsuitable persons to have the custody and tuition of such minor, or whose interests, in the opinion of the court, will be promoted thereby." (Emphasis added.) R.C. 2111.46, which addresses the continuation of a guardianship of a minor, states the following: "When a guardian has been appointed for a minor before such minor is over fourteen years of age, such guardian's power shall continue until the ward arrives at the age of majority, unless removed for good cause or unless such ward selects another suitable guardian." (Emphasis added.)
Although the probate court followed the best interest of the children standard in its decision, it implicitly addressed the questions of suitability of the guardians and appellant, as well as the continuing need for the guardianship. The probate court found that Betty Dick had done everything possible to foster a relationship with Zachary and Tylor, whereas appellant "had little or no involvement with the children for nearly three years after consenting to this guardianship arrangement." All testimony, including appellant's testimony, indicated that Betty Dick had taken very good care of the children.
The probate court further found that appellant had not shown the court that her life had completely stabilized. In support of its decision to deny appellant's motion to terminate guardianship, the court stated that appellant had lived in eight different residences since 1992 and was living in a rental home that she might have to leave. The court also noted that appellant was living with a man who had not yet completed his third divorce, although appellant hoped to marry him. The probate court found that Betty and Leonard Dick had provided stability for the boys, and was not convinced that appellant had proven that she could offer them that necessary stability. Implicitly, the probate court determined that the present guardians were suitable and that there was a continuing need for the guardianship.
We also note that the entry of the probate judge states that appellant "consented to the establishment of the guardianship and relinquished her parental rights thereby." This statement, which is repeated throughout the probate court's decision, is misleading; appellant has not "relinquished her parental rights" as one does in a permanent custody case, but rather has simply consented to the guardianship of her children. This guardianship may be terminated in the future if the probate court finds that there is no longer a continuing need for it. It also may change the guardians if it finds that the current guardians are no longer suitable. The third assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.